# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3373

_____

Rustico Lacsina

*Petitioner*

v.

Todd Blanche,[1] Acting Attorney General of the United States

*Respondent*

_____

No. 25-1754

_____

Rustico Lacsina

*Petitioner*

v.

Todd Blanche, Acting Attorney General of the United States

*Respondent*

_____

Petitions for Review of an Order of the
Board of Immigration Appeals

_____

_____

[1]Acting Attorney General Todd Blanche is automatically substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c)(2).

Submitted: April 14, 2026
Filed: August 6, 2026
_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Rustico Lacsina, a native and citizen of the Philippines, petitions for review of an order of the Board of Immigration Appeals (BIA) affirming the immigration judge's (IJ) order sustaining his charges of inadmissibility and an order of the BIA denying his motion to reopen proceedings. Having jurisdiction under 8 U.S.C. § 1252, we grant the petition for review in part, deny it in part, and remand.

I.

Lacsina was admitted to the United States as a lawful permanent resident in 1982. In 2013, Lacsina pled guilty to receiving stolen property, in violation of Cal. Penal Code § 496(a); in 2015, he pled guilty to possession of a controlled substance, to wit: methamphetamine, in violation of Cal. Health & Safety Code § 11377(a). In March 2024, DHS commenced removal proceedings against Lacsina by issuing him a Notice to Appear (NTA), which charged him with inadmissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(I), on the grounds that his conviction for receipt of stolen property was a "crime involving moral turpitude" (CIMT), and with inadmissibility under § 1182(a)(2)(A)(i)(II), on the grounds that his conviction for possession of a controlled substance constituted a violation of a law "relating to a controlled substance (as defined in section 802 of title 21)."

The IJ issued an order sustaining the charges of inadmissibility against Lacsina under § 1182(a)(2)(A)(i)(I) and (II). The IJ held that Lacsina's conviction for receiving stolen property was a CIMT because the crime required that he "know[] the property to be so stolen or obtained," Cal. Penal Code § 496(a), and "when an offense requires knowledge that the property was stolen, it is a crime involving moral

turpitude." The IJ further held that Lacsina's conviction for possession of a controlled substance "involved a drug defined as [a] federal drug in 21 U.S.C. § 802." The IJ subsequently ordered Lacsina removed to the Philippines.

Lacsina appealed the IJ's order sustaining his charges of inadmissibility to the BIA. The BIA dismissed his appeal. The BIA agreed with the IJ that Lacsina's conviction for receiving stolen property was a CIMT justifying his removal, and it rejected his argument that a CIMT requires an intent to permanently deprive the owner of their property because "neither this Board nor the . . . Eighth Circuit . . . has adopted any such 'permanent deprivation' requirement." Finding Lacsina's conviction for receiving stolen property to be independently sufficient to affirm the IJ's decision, the BIA declined to discuss Lacsina's conviction for possession of a controlled substance. Lacsina was then removed on November 14, 2024. Lacsina petitioned this Court to review the BIA's order on November 21st, but this petition was later consolidated with the proceedings described below on his motion.

In January 2025, after Lacsina had been removed from the United States, he moved to reopen removal proceedings. Lacsina pointed out that the California Superior Court had recently vacated his convictions for receiving stolen property and possession of a controlled substance, and thus, he argued, he was no longer inadmissible or removable based on these grounds. The BIA did not dispute that Lacsina's convictions had been vacated, but it denied his petition under the "departure bar" regulation, 8 C.F.R. § 1003.2(d). This regulation prevents aliens who have been removed from the United States from filing a motion to reopen. See id. The BIA further held that under its decision in Matter of Armendarez-Mendez, 24 I&N Dec. 646, 660 (BIA 2008), it lacked jurisdiction to reopen Lacsina's case. Now, Lacsina petitions for review of both the BIA's earlier dismissal of his appeal of the IJ's order and its denial of his motion to reopen.

-3-

## II.

We first examine Lacsina's petition to review the order denying his motion to reopen removal proceedings. Lacsina argues that the BIA erred in denying his motion to reopen because the departure bar contained in 8 C.F.R. § 1003.2(d) conflicts with and is thus invalidated by the statute governing motions to reopen, 8 U.S.C. § 1229a(c)(7). "We review the BIA's denial of a motion to reopen for abuse of discretion." Robles v. Garland, 23 F.4th 1061, 1063 (8th Cir. 2022). However, "an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction." Henley v. Brown, 686 F.3d 634, 639 (8th Cir. 2012). Additionally, following the Supreme Court's decision in Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), "[d]eference to the B[IA] . . . is now a relic of the past." Quito-Guachichulca v. Garland, 122 F. 4th 732, 735 (8th Cir. 2024). Thus, when a statute is clear, like this one, "we no longer treat the government's views as controlling or even 'especially informative.'" Id. (citation omitted); cf. Union Pac. R.R. Co. v. Surface Transp. Bd., 113 F.4th 823, 833 (8th Cir. 2024) (recognizing that when "confronted with a statutory ambiguity" a court may consider an agency's interpretation to help "determine the best reading of the statute" (quoting Loper Bright Enters., 603 U.S. at 400)).

Section 1229a(c)(7) states that "[a]n alien may file one motion to reopen proceedings." The statute also contains requirements for filing a motion to reopen, "including numeric limitations, evidentiary requirements, and time deadlines." Santana v. Holder, 731 F.3d 50, 56 (1st Cir. 2013) (citing 8 U.S.C. § 1229a(c)(7)(A)-(C)). However, the statute does not impose any geographic limitations on ordinary motions to reopen filed pursuant to § 1229a(c)(7)(A): it "does not distinguish between those aliens who are abroad and those who remain in the United States." Garcia-Carias v. Holder, 697 F.3d 257, 263 (5th Cir. 2012). The statute only mentions a geographic requirement for motions brought by aliens suffering from domestic violence. See 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV). Because aliens filing a motion to reopen under this provision are "exempt[] . . . from the deadlines on motions to reopen," "Congress limited this exemption by requiring that

-4-

the alien victim be 'physically present in the United States at the time of filing the motion.'" Garcia-Carias, 697 F.3d at 262 (citation omitted).

In contrast to § 1229a, regulations promulgated by the Department of Justice regarding motions to reopen impose a blanket geographic requirement on all such motions. See 8 C.F.R. § 1003.2(d). 8 C.F.R. § 1003.2(d) reads as follows:

> A motion to reopen . . . shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal . . . occurring after the filing of a motion to reopen . . . shall constitute a withdrawal of such motion.

The BIA adhered to this regulation in Matter of Armendarez-Mendez, stating that "the departure bar rule remains in full effect" and that it "impos[es] a limitation on [the BIA's] jurisdiction to entertain motions filed by aliens who had departed the United States." 24 I&N Dec. at 648, 660.

We have not yet held whether the BIA's adherence to the departure bar under 8 C.F.R. § 1003.2(d) is a valid exercise of agency authority under 8 U.S.C. § 1229a(c)(7). See Ortega-Marroquin v. Holder, 640 F.3d 814, 820 (8th Cir. 2011) ("[W]hether the departure bar conflicts with 8 U.S.C. § 1229a(c)(7) is a hypothetical question not properly before this court."). However, the circuit courts that have addressed this issue—ten in total—have unanimously held that the departure bar either conflicts with 8 U.S.C. § 1229a(c)(7) or does not limit the BIA's jurisdiction to hear motions to reopen. See, e.g., William v. Gonzales, 499 F.3d 329, 334 (4th Cir. 2007) ("[I]t is evident that 8 C.F.R. § 1003.2(d), containing the post-departure bar on motions to reopen, conflicts with the [motion to reopen] statute by restricting the availability of motions to reopen to those aliens who remain in the United States. Therefore, we conclude that this regulation lacks authority and is invalid."); Prestol-Espinal v. Att'y Gen., 653 F.3d 213, 224 (3d Cir. 2011) ("[T]he post-departure bar regulation conflicts with Congress' clear intent[.]"); Santana, 731

F.3d at 55 ("[T]he rule in every circuit to have addressed the arguments . . . is that the post-departure bar either conflicts with the motion to reopen statute, or cannot be justified as a jurisdictional limitation."); Garcia-Carias, 697 F.3d at 264 ("[T]he Board's application of the departure regulation to statutory motions to reopen is invalid . . . .  This conclusion is consistent with the decisions of our sister circuits[.]").

Here, we find no reason to chart a different course from our sister circuit courts.  As they all have recognized, there is nothing in the text of § 1229a(c)(7) that imposes a geographic limitation on filing motions to reopen.  See, e.g., Santana, 731 F.3d at 56.  The statute imposes limitations on the number of motions an alien may file, 8 U.S.C. § 1229a(c)(7)(A), the content of the motion, id. at (c)(7)(B), and the timing of the motion, id. at (c)(7)(C).  But it says nothing about a requirement based on the alien's location at the time of the filing.  Thus, because "[t]he relevant language nowhere prescribes, or even suggests, a geographic restriction on an 'alien [who] may file' the motion," the provision "unambiguously confers . . . the right to file a motion to reopen, in language that admits no exceptions."  Santana, 731 F.3d at 56 (second alteration in original) (citation omitted); see also Garcia-Carias, 697 F.3d at 263 ("[T]he statutory text conferring a right to file a motion to reopen plainly does not place any geographic restrictions on its exercise.").  Moreover, "the fact that Congress [already] provided for specific limitations on the right to file a motion to reopen bolsters the conclusion that § 1229a(c)(7)(A) cannot [also] except . . . aliens who have departed the country," William, 499 F.3d at 333, for "[w]hen Congress provides exceptions in a statute . . . . [t]he proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth," United States v. Johnson, 529 U.S. 53, 58 (2000).

Additionally, "Congress's requirement that domestic abuse victims physically remain in the United States in order to file out-of-time motions to reopen also buttresses our interpretation of the [motion to reopen] statute."  Garcia-Carias, 697 F.3d at 264.  Where Congress "includes particular language in one section of a statute but omits it in another section of the same Act . . . it is generally presumed

that Congress acts intentionally and purposely in the disparate inclusion or exclusion." William, 499 F.3d at 333 (alteration in original) (citation omitted). Thus, because geographic location is only mentioned in the portion of the statute discussing the domestic violence exception, see 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV), but not anywhere else, this "supports the conclusion that Congress did not condition the right to file a motion to reopen on an alien's presence in the United States," Garcia-Carias, 697 F.3d at 264; see also William, 499 F.3d at 333 ("[F]inding that physical presence in the United States is required before *any* motion to reopen may be filed would render the physical presence requirement expressly written into subsection (c)(7)(C)(iv)(IV) mere surplusage."); Util. Air Regul. Grp. v. EPA, 573 U.S. 302, 320 (2014) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (citation omitted)).

While the statutory text is ultimately what matters most, the fact that every other circuit court reviewing the issue has rejected the departure bar also bears significant persuasive weight. For while "we are not bound by another circuit's decision," "a sister circuit's reasoned decision deserves great weight and precedential value." United States v. Auginash, 266 F.3d 781, 784 (8th Cir. 2001) (citation omitted). This is particularly true here, where our sister circuit courts invalidated the departure bar even under the previous Chevron framework, where they had to "give the agency's interpretation deference . . . . [so long as] 'it [was] a reasonable interpretation of the statute—not necessarily . . . the interpretation deemed most reasonable by the courts.'" Beeler v. Astrue, 651 F.3d 954, 959 (8th Cir. 2011) (emphasis omitted) (citation omitted). Given that, under Loper Bright, "[d]eference to the Board [of Immigration Appeals] . . . is now a relic of the past," Quito-Guachichulca, 122 F. 4th at 735, there is now an even lower threshold to reject the BIA's interpretation of § 1229a(c)(7) than before.

The Government argues that the BIA did not abuse its discretion because its decision in Matter of Armendarez-Mendez "remains good law in this Circuit" and "the departure bar regulation . . . has not been repealed or invalidated by this Court." But this argument begs the question. We are not bound by the BIA's precedent, and

the very question now before us is whether the departure bar is valid. Furthermore, the Government's emphasis on the abuse-of-discretion standard of review is of no help to it, as "[e]rroneous legal conclusions constitute an abuse of discretion." Palmer v. Union Pac. R.R. Co., 139 F.4th 970, 973 (8th Cir. 2025).

The Government also contends that the departure bar is implied in § 1229a(c)(7) because at the time it was adopted via the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009-546, lawmakers were concerned that "aliens were filing frivolous motions to reopen as a means of prolonging their time in the United States." However, "legislative history is not the law," Avila v. Bondi, 170 F.4th 1128, 1138 (8th Cir. 2026) (citation omitted), and even if it were, it would not support the Government's contention here, see Garcia-Carias, 697 F.3d at 261-62 (noting that IIRIRA repealed a prior statute "prohibit[ing] federal courts from reviewing deportation and exclusion orders if the alien 'ha[d] departed from the United States after[wards]'" and instead "established a statutory right to file a motion to reopen" (citation omitted)); Dada v. Mukasey, 554 U.S. 1, 14 (2008) (noting that IIRIRA "transform[ed] the motion to reopen . . . to [create] a statutory form of relief").

We also agree with Lacsina that the BIA abused its discretion in holding that it lacked jurisdiction to reopen his removal proceedings. Although the BIA relied on Matter of Armendarez–Mendez to conclude that it lacked jurisdiction, "Congress alone controls the BIA's jurisdiction to hear motions to reopen filed under 8 U.S.C. § 1229a(c)(7)." Luna v. Holder, 637 F.3d 85, 100 (2d Cir. 2011). And because § 1229a(c)(7) "says nothing about jurisdictional limitations of any kind, let alone th[ose based on the departure bar]," the BIA's interpretation here "has no roots in any statutory source and misapprehends the authority delegated to [it] by Congress." Pruidze v. Holder, 632 F.3d 234, 235 (6th Cir. 2011). Thus, we agree that "the BIA may not contract the jurisdiction that Congress gave it by applying the departure bar regulation, as suggested by the BIA in Armendarez–Mendez, to statutory motions to reopen." Luna, 637 F.3d at 100 (citation omitted); see also Palmer, 139 F.4th at 973 (noting that erroneous legal conclusions are an abuse of discretion).

Lastly, Lacsina argues that the BIA erred in declining to reopen his case sua sponte pursuant to 8 C.F.R. § 1003.2(a); he argues that it erroneously concluded that the departure bar deprived it of jurisdiction to do so.[2]  However, Lacsina concedes that "[t]his court has previously joined many other circuits in deciding that the court does not have jurisdiction over the BIA's decision whether to reopen sua sponte . . . 'under 8 C.F.R. § 1003.2(a).'"  We agree.  See, e.g., Tamenut v. Mukasey, 521 F.3d 1000, 1005 (8th Cir. 2008) (en banc) (per curiam) ("[W]e join ten other circuits in concluding that the BIA's decision whether to reopen proceedings on its own motion under 8 C.F.R. § 1003.2(a) is committed to agency discretion by law."); Manyary v. Bondi, 129 F.4th 473, 479 (8th Cir. 2025) ("Although the BIA may reopen removal proceedings *sua sponte*, this Court generally lacks jurisdiction to review such decisions.").  Thus, we decline to address the legal question of whether the departure bar deprives the BIA of jurisdiction to reopen a case sua sponte, as we could not review the BIA's decision to reopen a case sua sponte anyway.  Cf. Vorbeck v. Schnicker, 660 F.2d 1260, 1264 (8th Cir. 1981) ("This Court is without power to give advisory opinions." (citation omitted)).  Accordingly, we grant the petition for review as to the BIA's denial of Lacsina's statutory motion to reopen, but deny the petition for review as to its denial of his motion for sua sponte reopening.

### III.

Lacsina also challenges the BIA's order affirming the IJ's order sustaining his charges of inadmissibility.  However, both the IJ's and the BIA's orders were based on Lacsina's criminal convictions in California state court, and Lacsina's subsequent motion to reopen was based on the fact that these convictions were vacated.

---

[2]Because a sua sponte reopening of proceedings is a different remedy from the grant of a statutory motion to reopen, see Tamenut v. Mukasey, 521 F.3d 1000, 1004 (8th Cir. 2008) (en banc) (per curiam) (noting that "[t]he statute governing motions to reopen . . . does not establish any standard to guide the agency's discretion whether to reopen on its own motion"), we address this issue separately.

Thus, the BIA should have the first opportunity to consider the motion to reopen based upon the vacated California convictions. Our holding today is merely that Lacsina's "statutory right to file a motion to reopen is not trumped by the B[IA]'s departure [bar] regulation." Garcia-Carias, 697 F.3d at 265. So, "[g]iven our narrow procedural ruling, nothing in this opinion should be read as commenting on any substantive claim [Lacsina] may present on remand." Id. at 265-66.

IV.

For the foregoing reasons, we grant Lacsina's petition for review as to his statutory motion to reopen, deny his petition for review as to his motion for sua sponte reopening, and remand for further proceedings consistent with this opinion.

_____